### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**SHELIA PARKER-HALL**

    **Plaintiff,**

                              **Case No.**

      **v.**

**THE UNIVERSITY OF FLORIDA**
**BOARD OF TRUSTEES,**

    **Defendant.**

_____/

### PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff SHELIA PARKER-HALL (hereinafter "Plaintiff"), through her undersigned counsel, seeks redress against Defendant THE UNIVERSITY OF FLORIDA BOARD OF TRUSTEES (hereinafter "Defendant" or "UF") and states as follows:

### INTRODUCTION

1. Plaintiff brings this action to remedy discrimination and retaliation based on disability pursuant to the provisions of the Americans with Disabilities Act, as amended, ("ADAAA"), and discrimination and

retaliation based on race in violation of Title VII of the Civil Rights Act of 1964

and the Florida Civil Rights Act, Section 760.07, F.S.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over Plaintiff's ADAAA

and retaliation claims pursuant to 28 U.S.C. § 1331.

3.     This Court has supplemental jurisdiction over Plaintiff 's state law

claims pursuant to 28 U.S.C. § 1367.

4.     Venue in this court is proper for purposes of Plaintiff's Title VII

claim pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of

the events giving rise to this claim occurred in this judicial district.

## PARTIES

5.     Plaintiff is a citizen of the United States who resides in this

judicial district.

6.     Plaintiff was hired by Defendant as a Clerical Aid in 1989, and

later promoted to Fiscal Assistant III in 2015, the position she held until her

termination.

7.     Defendant terminated Plaintiff on June 8, 2020.

8.     Defendant UF is a government entity operating under the laws of

the State of Florida.

2

9.     At all relevant times, Defendant is divided into 16 colleges, which are further divided into departments including the Food Science and Human Nutrition Department, which was the department to which Plaintiff was assigned and was a part of the College of Agricultural and Life Sciences.

## TITLE VII AND ADAAA STATUTORY PREREQUISITES

10.     Plaintiff is an African American individual who suffered discrimination based on her race and disability. As such, she is a member of a class of individuals protected by Title VII and the ADAAA.

11.     Following her unlawful termination, Plaintiff filed a Charge of Discrimination on September 30, 2020, with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based upon her disability and race as well as retaliation.

12.     On or about May 27, 2021, Plaintiff received a Notice of Right to Sue from the EEOC on her charge.

13.     Accordingly, Plaintiff's discrimination claim is timely filed within 90 days of the receipt of the Notice of Right to Sue.

## FACTS

14.     In August 2019, Plaintiff began experiencing extreme pain in her right hand.

15.    Plaintiff reported the pain she was experiencing to her then supervisor, Julie Barber, who then informed Plaintiff to contact workers compensation and file a claim.

16.    Plaintiff did so and was sent to Urgent Care where she was referred to an orthopedic doctor, who diagnosed Plaintiff with Carpel Tunnel Syndrome CRPS, a disabling condition under the ADAAA.  Plaintiff developed this condition as a result of typing and keyboarding at the Defendant's location for over 30 years.

17.    Plaintiff treated with the orthopedic doctor until November 2020, and thereafter referred to a new doctor who continues to treat the condition presently.

18.    In January 2020, Plaintiff began experiencing unrelated pain in her abdominal area and as a result, sought medical treatment.

19.    On February 18, 2020, Plaintiff required surgery to her abdominal region and because of this, Plaintiff missed work which was approved by FMLA from that time to March 24, 2020.

20.    From March to early April 2020, Plaintiff was out of work on an extended medical leave until she returned to work in April 2020.

21.    Around April 16, 2020 to June 3, 2020, Plaintiff's physician requested that Plaintiff take additional time away from work because she was

experiencing work related stress, depression, and anxiety; and for recovery of the surgery.

22.    Between June 4, 2020 to July 17, 2020, Plaintiff again applied for an accommodation to be out of work due to doctor's orders and recommendation which was denied by Plaintiff's current supervisors, Donna Roberts and Susan Percival.

23.    During all times, Plaintiff was still under doctor's care and workman's comp for her injured hand due to a legitimate and recognizable ADA disability.

24.    During this time, Plaintiff suffered from physical and mental impairments that altered major life activities.

25.    During this time, no accommodation was made for Plaintiff knowing that Plaintiff was suffering with multiple disabilities.

26.    Plaintiff was also scheduled to have surgery on her injured hand on June 9, 2020, which the Defendant was fully aware.

27.    On June 4, 2020 and June 5, 2020, Plaintiff used leave without pay.

28.     On June 5, 2020, Plaintiff received an email from her supervisor, Roberts, demanding Plaintiff return to work that following Monday on June 8, 2020.

29.     On June 8, 2020, Plaintiff returned to work, reported to a meeting around 1:00 pm and instead of being informed that her accommodation request had been approved, she was terminated.

30.     Plaintiff timely objected to this disciplinary action as she reasonably believed she was covered under the Americans with Disability Act, as amended and Defendant's action were discriminatory and retaliatory.

31.     Since Roberts became Plaintiff's supervisor, in September 2019, Defendant used tactics to intimidate Plaintiff in an attempt to dissuade her from requesting accommodations.

32.     Despite providing Defendant with proof of the doctor's accommodation request for additional time off, Defendant intentionally disregarded the request and continued to expose Plaintiff to serious health hazards as she was required to perform work tasks that were clearly impaired by her existing mental and physical disabilities.

33.    Plaintiff previously complained to her immediate supervisor, Roberts and subsequently to Human Resources (HR) that she believed she was the subject of discrimination and the victim of a hostile work environment by Defendant's supervisors and requested education on her options.

34.    After complaining, Plaintiff was given a counseling letter alleging pretextual statements of non-performance on the job.

35.    After being terminated, Plaintiff followed through with her hand surgery on June 9, 2020.

36.    Another surgery was also scheduled on April 27, 2021, for the same injury.

37.    During her employment with Defendant, Plaintiff was also treated differently than similarly situated Caucasian employees.

38.    During her employment with Defendant, Plaintiff was denied pay raises to which she was entitled, and which were given to similarly situated Caucasian employees.

39.    Plaintiff was also disciplined and retaliated against for taking necessary time off, while similarly situated Caucasian employees were not reprimanded or disciplined.

40.    Plaintiff was terminated from her employment based upon her disability in violation of the Americans with Disabilities Act, as amended, *inter alia*.

41.    Plaintiff was terminated from her employment based upon her race in violation of Title VII.

42.    Plaintiff was terminated in retaliation for her complaints of illegal discrimination.

## COUNT I
## <u>DISCRIMINATION UNDER THE ADAAA</u>

43.    Plaintiff re-alleges and incorporates by reference paragraphs 1-36, and 40 above as if fully set forth herein.

44.    Under the Americans with Disabilities Act, as amended ("ADAAA"), it is unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); 29 C.F.R. §1630.4.

45.    Under the ADAAA, prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an

applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b) (5).

46.     The "reasonable accommodation" element of the [ADA] imposes a duty upon employers to engage in a flexible, interactive process with the employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working."

47.     Plaintiff was and is an individual with a disability within the meaning of the ADAAA at all times relevant to this lawsuit.

48.     Plaintiff was and is substantially limited in the major life activities of communicating, concentrating, thinking, and interacting with others, as well as in the major bodily functions of the brain and neurological system, and in physical capabilities as defined by the ADAAA.

49.     Defendant regarded Plaintiff as disabled within the meaning of the ADAAA when it approved her previous workplace accommodation for her hand injury and later the FMLA for abdominal surgery and recovery.

50.     Plaintiff was a qualified individual under the ADAAA because she could perform her essential job functions with a reasonable accommodation. 42 U.S.C. § 12111(8).

51.    Defendant was a covered employer under the ADAAA, as it employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. *Id.* § 12111(5).

52.    Defendant discriminated against Plaintiff based on her disability by terminating her employment based on her disability by using the pretext of job performance.

53.    Defendant discriminated against Plaintiff on the basis of her disability by failing to provide reasonable accommodation to Plaintiff.

54.    Defendant discriminated against Plaintiff on the basis of her disability by failing to engage in an interactive process to consider possible reasonable accommodations for Plaintiff to perform her essential job functions.

55.    Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the ADAAA.

56.    Plaintiff has suffered damages as a result of Defendant's unlawful actions including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.    Back pay and benefits;

b.      Interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering;

e.      Injunctive relief;

f.      Prejudgment interest;

g.      Costs and attorney's fees; and

h.      Such other relief as the Court may deem just and proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADAAA

57.    Plaintiff re-alleges and incorporates by reference paragraphs 1-36, 40, and 42 above as if fully set forth herein.

58.    As discussed in more detail *supra*, Plaintiff further alleges that Defendant UF as Plaintiff's employer retaliated against her for engaging in protected activity in violation of 42 U.S.C. § 2000e-3(a) (*i.e.* complaining that she was not accommodated with proper time off or workplace accommodations to perform essential job functions).

59.    Plaintiff opposed a discriminatory practice when she complained to her superiors that she felt she was being retaliated against after being written up and given a counseling letter.

60.     Plaintiff opposed Defendant's discriminatory practices when she was denied and should have been covered under the Family Medical Leave Act (FMLA) for recovery.

61.     Plaintiff opposed discriminatory practices when she was terminated just one day before her workman's comp surgery for her hand.

62.     Plaintiff complained that no disciplinary action has been taken against her until she complained to Roberts and HR about the discrimination and hostile work environment created by the Defendant through its supervisors.

63.     Plaintiff complaint that other disciplinary actions were not taken against her until she further requested physician sanctioned time off for a disabling surgery that should have been covered under FMLA.

64.     Defendant knew of Plaintiff's disabilities; yet, instead of making a proper accommodation felt that terminating Plaintiff was the better option in violation of her ADAAA protections.

65.     Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.      Back pay and benefits;

b.      Interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering;

e.      Injunctive relief;

f.      Prejudgment interest;

g.      Costs and attorney's fees; and

h.      Such other relief as the Court may deem just and proper.

## COUNT III
## RACE DISCRIMINATION UNDER TITLE VII

66.     Plaintiff re-alleges and incorporates by reference paragraphs 1-14, 37-39, and 41 above as if fully set forth herein.

67.     As discussed in more detail *supra*, Plaintiff further alleges that Defendant UF as Plaintiff's employer discriminated against her in violation of Title VII.

68.     Plaintiff was only one of two black women who worked in the Food Science Department.

69.    Despite being the only two black employees, both women –
Plaintiff and the other employee were both issued counseling letters and
subsequently terminated.

70.    When Supervisor Donna Roberts started, Plaintiff began
experiencing exclusion from company and team processes and procedures
which directly impacted her job.

71.    Supervisor Donna Roberts also used this tactic to express that she
"didn't think you want to be a part of the team" after expounding that she only
liked the white employees (calling them by name) at the job.

72.    Plaintiff further suffered racial discrimination where other white
employees were treated more favorably and given opportunities that Plaintiff
was denied.

73.    For example, Plaintiff submitted a request to attend college
courses to which her schedule would need to be re-arranged to accommodate it
– the request was denied.

74.    However, one white employee – Chris Nieves – filed the same or
substantially similar request and it was approved which caused his workload
to fall on Plaintiff.

75.    Plaintiff thereafter submitted a different request for online classes and which would be outside work hours; that request was denied.

76.    Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering;

e.    Injunctive relief;

f.    Prejudgment interest;

g.    Costs and attorney's fees; and

h.    Such other relief as the Court may deem just and proper.

**COUNT IV**
**RACE DISCRIMINATION IN VIOLATION OF FCRA**

77.    Plaintiff re-alleges and incorporates by reference paragraphs 1-14, 37-39, and 41 above as if fully set forth herein.

78.    Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

79.    As discussed in more detail *supra*, Plaintiff further alleges that Defendant UF as Plaintiff's employer discriminated against her in violation of pf the FCRA.

80.    Plaintiff was only one of two black women who worked in the Food Science Department.

81.    Despite being the only two black employees, both women – Plaintiff and the other employee were both issued counseling letters and subsequently terminated.

82.    When Supervisor Donna Roberts started, Plaintiff began experiencing exclusion from company and team processes and procedures which directly impacted her job.

83.    Supervisor Donna Roberts also used this tactic to express that she "didn't think you want to be a part of the team" after expounding that she only liked the white employees (calling them by name) at the job.

84.     Plaintiff further suffered racial discrimination where other white employees were treated more favorably and given opportunities that Plaintiff was denied.

85.     For example, Plaintiff submitted a request to attend college courses to which her schedule would need to be re-arranged to accommodate it – the request was denied.

86.     However, one white employee – Chris Nieves – filed the same or substantially similar request and it was approved which caused his workload to fall on Plaintiff.

87.     Plaintiff thereafter submitted a different request for online classes and which would be outside work hours; that request was denied.

88.     Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.     Back pay and benefits;

b.     Interest on back pay and benefits;

c.     Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering;

e.      Injunctive relief;

f.      Prejudgment interest;

g.      Costs and attorney's fees; and

h.      Such other relief as the Court may deem just and proper.

## COUNT V
## RETLIATION UNDER TITLE VII

89.    Plaintiff re-alleges and incorporates by reference paragraphs 1-14, 37-39, and 42 above as if fully set forth herein.

90.    As discussed in more detail *supra*, Plaintiff further alleges that Defendant UF as Plaintiff's employer retaliated against her for engaging in protected activity in violation of Title VII.

91.    Plaintiff opposed a discriminatory practice when she complained to her superiors that she felt she was being discriminated against and retaliated against based upon her race after being written up and given a counseling letter.

92.    Plaintiff complained that no disciplinary action has been taken against her until she complained to Roberts and HR about the discrimination

based upon her race and hostile work environment created by the Defendant through its supervisors.

93.    Plaintiff suffered an adverse action after reporting to Defendant the unlawful conduct.

94.    Defendant engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff as set forth above.

95.    Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

96.    Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering;

e.    Injunctive relief;

f.    Prejudgment interest;

g.    Costs and attorney's fees; and

h.    Such other relief as the Court may deem just and proper.

**COUNT VI**
**RACE DISCRIMINATION IN VIOLATION OF FCRA**

97.    Plaintiff re-alleges and incorporates by reference paragraphs 1-14, 37-39, and 42 above as if fully set forth herein.

98.    As discussed in more detail supra, Plaintiff further alleges that Defendant UF as Plaintiff's employer retaliated against her for engaging in protected activity in violation of Section 760.07, F.S.

99.    Plaintiff opposed a discriminatory practice when she complained to her superiors that she felt she was being discriminated against and retaliated against based upon her race after being written up and given a counseling letter.

100.    Plaintiff complained that no disciplinary action has been taken against her until she complained to Roberts and HR about the discrimination based upon her race and hostile work environment created by the Defendant through its supervisors.

101.    Plaintiff suffered an adverse action after reporting to Defendant the unlawful conduct.

102.   Defendant engaged in unlawful employment practices prohibited by the FCRA by retaliating against Plaintiff as set forth above.

103.   Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

104.   Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering;

e.    Injunctive relief;

f.    Prejudgment interest;

g.    Costs and attorney's fees; and

h.    Such other relief as the Court may deem just and proper.

## COUNT VII

## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

105.   Plaintiff incorporates herein Paragraph 1 through 42 of this Complaint.

106.   At all times herein relevant, Defendant was bound by its common law and statutory duties to keep Plaintiff safe from harm and not to violate her right to be free from an abusive work environment.

107.   Plaintiff PARKER-HALL has suffered substantial and enduring emotional injury as a result of Defendant exposing her to physical and mental harm and termination.

108.   Defendant knew or should have known, that its refusal and acknowledgment for reasonable accommodation and termination would reasonably cause Plaintiff serious injury.

109.   Defendants breached their duty to exercise due care by refusing to accommodate Plaintiff for her disability but instead created a hostile work environment that consisted of threats of termination, intimidation, unfounded allegations of work performance, and illegalities.

110.   As a proximate result of Defendants' acts or omissions as described above,

Plaintiff has suffered serious emotional distress in the form of shame, humiliation, degradation, and physical injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.      All wages and benefits Plaintiff would have received but for the Title VII violations, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

b.      A permanent injunction enjoining Defendant from engaging in the practices complained of herein;

c.      A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII;

d.      The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

e.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

f.      Such other relief as the Court may deem just or equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated this 24th day of August, 2021.

*/s/ Anthony J. Hall*
**ANTHONY J. HALL, ESQ.**
Fla. Bar No. 40924
**THE LEACH FIRM**
631 S. Orlando Ave., Ste. 300
Winter Park, FL 32789
Tel: 407-543-6817
Fax: 321-594-7316
Email: ahall@theleachfirm.com
Email: npacheco@theleachfirm.com

*Counsel for Plaintiff*